**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BURT BUTLER**                                                                                    **PLAINTIFF**

V.                               **CASE NO. 3:15-CV-368-BD**

**CAROLYN W. COLVIN, Acting Commissioner**
**Social Security Administration**                                              **DEFENDANT**

**ORDER AFFIRMING THE COMMISSIONER**

Plaintiff Burt Butler seeks review of the Commissioner's decision to deny his claims for disability benefits. Mr. Butler filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), alleging disability beginning July 24, 2012. (Tr. 10) Mr. Butler's claims were denied initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The ALJ determined that Mr. Butler had not been under a disability as defined by the Act. (Tr. 19) The Appeals Council denied Mr. Butler's request for review, thus making the ALJ's decision the Commissioner's final decision. (Tr. 1) Mr. Butler seeks judicial review of the Commissioner's denial of his application. The parties consented to the jurisdiction of the Magistrate Judge, and the case is ripe for decision.

**I. The Commissioner's Decision**

The ALJ found that Mr. Butler met the insured status requirements of the Act through September 30, 2016. (Tr. 12) At step one of the sequential five-step evaluation

process, the ALJ found that Mr. Butler had not engaged in substantial gainful activity since his alleged onset date of July 24, 2012. *Id*. The ALJ concluded at step two that Mr. Butler had the following severe impairments: degenerative disc disease of the lumbar spine, affective disorder, and anxiety disorder. *Id*. At step three, the ALJ determined that Mr. Butler's impairments did not meet or equal a listed impairment. (Tr. 13) 20 CFR Part 404 Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

Before proceeding to step four, the ALJ determined that Mr. Butler had the residual functional capacity ("RFC") to perform light work, but with added limitations. (Tr. 14) The claimant would be limited to simple, routine, repetitive tasks where interpersonal contact is incidental to work performed and supervision is simple, direct, and concrete. *Id*. The ALJ considered the medical evidence, as well as Mr. Butler's complaints regarding his pain, treatment, and medication in arriving at the conclusion that he could perform light work with additional limitations. (Tr. 15) Because the demands of Mr. Butler's past work would not exceed his residual functional capacity, the ALJ concluded at step four that Mr. Butler was capable of performing past relevant work. (Tr. 19) Consequently, the ALJ found that Mr. Butler was not disabled. *Id*.

## II. Discussion

### A) Standard of Review

Mr. Butler raises two points on appeal: first, that the ALJ erred in finding Mr.

Butler did not meet listing 1.04; and second, that the ALJ erred in finding that Mr. Butler had the residual functioning capacity to perform past work at the light exertional level. The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

**B) Substantial evidence supports the ALJ's Step 3 findings**

Mr Butler argues that the ALJ erred in finding he did not meet a listing at step three. See 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) The ALJ addressed listings 12.04 and 12.06, those assigned to affective disorders. Mr. Butler makes no claim regarding the finding that he did not meet listings 12.04 and 12.06, so that argument is waived.

Instead, Mr. Butler asserts that he did meet listing 1.04. (#10 at 5) The ALJ did not address listing 1.04, but failure to address a specific listing is not reversible error if

3

the record supports the overall conclusion. *Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003)  For his argument, Mr. Butler only recited the listing language, which gives various examples of conditions that qualify when a nerve root is compromised and the requirements of paragraphs A, B, or C are met. *Id.* at 6.  Spinal stenosis is one example of such condition, and Mr. Butler relies upon the MRI in the record to show he had "mild spinal canal stenosis." (Tr. 397)  Mr. Butler also had a positive straight-leg raise on the left at 10-15 degrees and on the right at 40 degrees, according to records from Caraway Medical Center. (Tr. 377, 378)  Although Mr. Butler did not set forth which paragraph of listing 1.04 he met, the Court infers that he believes he met either paragraph A or paragraph C, based on the diagnosed mild spinal stenosis and positive straight-leg raise.

Paragraph A requires: 1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; 2) limitation of motion of the spine; 3) motor loss accompanied by sensory or reflex loss; and 4) if there is involvement of the lower back, positive straight-leg raising test. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. Paragraph C requires lumbar spinal stenosis resulting in pseudoclaudication, established by findings upon appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B(2)(b). *Id*.

"To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). The evidence in the record does not show that Mr. Butler met all of the requirements of Listing 1.04. Straight-leg raise was negative in 2012 according to Dr. Troxel, the consultative medical examiner. (Tr. 351) Mr. Butler's range of motion was unlimited at that time. *Id.* Dr. Troxel also noted that Mr. Butler was able to "stand/walk without assistive devices." (Tr. 352)

Mr. Butler's family doctor, Dr. Joseph Pierce, M.D., observed on February 4, 2014 that Mr. Butler had a normal gait and station, full range of motion and strength in extremities, normal muscle tone, and normal sensory examination and could participate in an exercise program. (Tr. 13-19, 372) At a March 4, 2014 visit to Dr. Pierce, Mr. Butler did not complain of any back pain or abnormalities. Dr. Pierce observed that Mr. Butler's lumbar radiculopathy had deteriorated, but that he had normal gait, strength, and muscle tone, with no joint swelling or effusions. (Tr. 367) Although Mr. Butler complained of radiating pain from his neck to his knee that "hurt[s] all the time," the medical evidence renders Mr. Butler's complaints not entirely credible. Listing 1.04 requires medical documentation, not just subjective testimony, to prove a claimant met the listing.

It should be noted that the medical evidence concerning Mr. Butler's back injury is thin; he submitted only two exhibits on the issue. Ex. 7F and 8F. A claimant has the burden of proving that an impairment (or combination of impairments) meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Mr. Butler's attorney

admitted at the hearing that "he's not had a whole lot of time to get a whole lot of medical records," even though nearly two years passed between the initial application and the hearing date. (Tr. 27) Mr. Butler had the opportunity to submit more substantial medical evidence, and the court must consider the absence of longitudinal records related to the condition in making its findings. Mr. Butler did not meet his burden at step three.[1]

### C. Substantial evidence supports the ALJ's finding that Mr. Butler had the residual functioning capacity to return to past relevant work

The ALJ determined that Mr. Butler could return to his past relevant work at the light exertional level, with the following limitations: simple, routine, repetitive tasks; incidental interpersonal contact; and simple, direct, and concrete supervision. (Tr. 14, 15) The medical records, reviewed above, do not call for more mental or physical limitations in the hypothetical posed by the ALJ. As for the alleged mental impairment, Mr. Butler did experience suicidal ideation in 2003. However, the records from 2012 visits to Mid-South Health Systems showed clear speech, logical thought processes, full effect, and cooperation. (Tr. 342) He had no impairments in cognition and had a good prognosis. (Tr. 343) There are only two mental health visits in the record, so the Court concludes that Mr. Butler did not seek consistent or long-term mental health treatment. This undermines the assertion that he had a serious mental impairment.

---

[1] Mr. Butler made a tangential argument that Rule 201.11 of the medical-vocational guidelines ("Grids") directs a finding of disability in this case. (#10 at 9) The ALJ properly resolved that Mr. Butler could perform past work at Step four; therefore, the Grids are inapplicable in this case.

Mr. Butler demonstrated mild, if any, limitations physically.  He could pick up a pen and write, had no neurological deficits, and had no decreased ability to walk, stand, sit, lift, carry, handle, finger, hear or speak.  (TR. 352, 353 and 367)  A state agency examination in January 2013 revealed "no limitations on any physical activity." (Tr. 90)

Moreover, Mr. Butler's complaints of pain in his neck and back do not align with his reports of daily activities.  He could prepare three-course meals, take care of personal hygiene needs, take care of his cat, ride a bicycle, talk on the phone, watch TV, shop, do laundry, vacuum, and clean.  (Tr. 272-276)

A claimant's RFC is what he can do despite his limitations and is based upon all the relevant evidence including medical records, treating physicians' and others' observations, and the claimant's own descriptions of his limitations.  See *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 20 C.F. R. §§ 404.1545, 416.945.   The ALJ properly considered the entire record, including vocational expert testimony (Tr. 50, 51), in finding Mr. Butler could return to past relevant work.

Finally, because the ALJ's step four analysis provided for a return to past relevant work, Mr. Butler's argument that he qualified for disability based on the Medical-Vocational Guidelines is moot.

### III.  Conclusion

The ALJ properly determined Mr. Butler did not meet a listing and could return to past relevant work, and there is substantial evidence to support the Commissioner's

decision that Mr. Butler was not disabled within the meaning of the Social Security Act. Accordingly, the final determination of the Commissioner is AFFIRMED, and Mr. Butler's complaint is DISMISSED with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE